## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| DURAPLAS, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-1310-K |
| | § | |
| DIVERSITECH CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Plaintiff's Supplemental Complaint and exhibits (the "Supplemental Complaint") (Doc. No. 23), Defendant DiversiTech Corporation's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 25) (the "Motion"), Defendant DiversiTech Corporation's Memorandum of Law in Support of its Motion to Dismiss (the "Memorandum in Support") (Doc. No. 26), DuraPlas, LP's Opposition to Motion to Dismiss (the "Opposition") (Doc. No. 38), and Defendant DiversiTech Corporation's Reply Memorandum of Law in Further Support of its Motion to Dismiss (the "Reply") (Doc. No. 42). The Court has carefully considered the Supplemental Complaint, the Motion, the Memorandum in Support, the Opposition, and the Reply, as well as the applicable law and the relevant portions of the record. For the reasons stated below, the Court **GRANTS-IN-PART AND DENIES-IN-PART** the Motion.

1

## I.    Background

In Plaintiff's Original Complaint filed May 26, 2025 (the "Original Complaint"), Plaintiff DuraPlas, LP ("DuraPlas") asserted ten claims against Defendant DiversiTech Corporation ("DiversiTech"). Doc. No. 1. In its Supplemental Complaint, DuraPlas added allegations and exhibits relating to facts arising after May 26, 2025. *See* Doc. No. 23 (Supplemental Complaint); Doc. No. 11-2 (comparing Original Complaint and Supplemental Complaint); *see also* FED. R. CIV. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."). In its Supplemental Complaint, DuraPlas added two claims. *Id.* As a result, the Supplemental Complaint is the live complaint, and it cites exhibits that were filed both with the Original Complaint and the Supplemental Complaint. Doc. Nos. 1-2–1-13 & 23-1–23-7 (Exhibits A–R). To clarify, DiversiTech styled its Motion as a motion to dismiss DuraPlas's "Amended Complaint." *See* Doc. No. 25. DiversiTech also repeatedly refers to an "Amended Complaint." *See id.* at 1; Doc. No. 26 at 1; Doc. No. 42 at 1. The Court understands the present Motion as a motion to dismiss DuraPlas's Supplemental Complaint (Doc. No. 23), which is the live pleading in this case. No "amended" complaint has been filed in this case.

In the Motion, DiversiTech moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss with prejudice all claims asserted against it for either

lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted.

## II.    Standard of Review

### A.    Federal Rule of Civil Procedure 12(b)(1)

"The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884) (cleaned up)). Therefore, a party may challenge a district court's subject matter jurisdiction to hear a case by filing a motion pursuant to Federal Rule of Civil Procedure 12(b)(1). The district court must resolve any Rule 12(b)(1) motion before addressing any other matter because the court must find it has jurisdiction before it determines the validity of any claim. *Moran v. Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).

A Rule 12(b)(1) motion may assert either a facial or factual challenge to the court's subject matter jurisdiction. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). If the motion does not include evidence outside the complaint, that challenge is considered a facial attack on the court's subject matter jurisdiction. *Id.* "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.*

## B.    Federal Rule of Civil Procedure 12(b)(6)

Generally speaking, a pleading that properly states a claim for relief contains a short and plain statement of the claim showing the complainant is entitled to relief. FED. R. CIV. P. 8(a). To properly state a claim of fraud, however, the complainant must state with particularity the circumstances constituting fraud. FED. R. CIV. P. 9(b).

A party may bring a Rule 12(b)(6) motion to dismiss when a complaint fails to properly state a claim. FED. R. CIV. P. 12(b)(6). To properly state a claim, a complaint must assert facts that, taken as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Though the court "must accept as true all of the allegations contained in a complaint," the court need not accept as true the complaint's "legal conclusions," "[t]hreadbare recitals of the elements of a cause of action," or "mere conclusory statements." *Id.* Furthermore, "[w]here there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940). And

"[i]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Jenkins v. Tahmahkera*, 151 F.4th 739, 747 (5th Cir. 2025) (quoting *United States ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 274 n.8 (5th Cir. 2015) (cleaned up)).

A dismissal granted pursuant to a "motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). Thus, when a claimant fails to properly state a claim, district courts ordinarily grant leave to amend an inadequate complaint. Indeed, courts should freely give leave to amend when justice so requires. *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013) (citing FED. R. CIV. P. 15(a)(2)). That said, that "generous standard is tempered by the necessary power of a district court to manage a case." *Id.* (quoting *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir. 2013), *abrogated in part on other grounds by Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542 (Tex. 2016)). Thus, in determining whether to grant leave to amend, "the court may consider factors such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

III.    **Analysis**

A.    **Counts VI and VII**

DiversiTech argues the Court lacks subject matter jurisdiction over Counts VI and VII because there is no case or controversy regarding U.S. Patent No. 11,794,440 (the "'440 Patent") or U.S. Patent No. 9,016,653 (the "'653 Patent") given the absence of any factual basis for an allegation that DiversiTech has attempted to enforce these patents against DuraPlas or that either has been infringed by DuraPlas. As a result, it seeks dismissal of Counts VI and VII under Rule 12(b)(1). Def.'s Mot. at 2; Mem. in Supp. at 15–16.

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). As explained by the Supreme Court in *MedImmune, Inc. v. Genentech*, "[t]he threshold question for declaratory judgment jurisdiction is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 903 (Fed. Cir. 2014) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). The Federal Circuit has explained that, following *MedImmune*, "jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even

6

perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380–81 (Fed. Cir. 2007). Notably, this affirmative act need not be directed directly toward the declaratory judgment plaintiff. *DataTern, Inc.*, 755 F.3d at 906 (stating that "a patentee's aggressive enforcement strategy, even in the absence of direct threats against the declaratory plaintiff, may . . . support jurisdiction").

DiversiTech has made a facial challenge to the Court's subject matter jurisdiction because the Motion challenges subject matter jurisdiction without using evidence outside the complaint. *See Williamson*, 645 F.2d at 412. In particular, DiversiTech argues DuraPlas does not allege anything that plausibly supports a claim that DiversiTech sought to enforce the '440 and '653 Patents against it. Opp'n at 16. As a result, the Court need only determine whether DuraPlas has sufficiently alleged a basis of subject matter jurisdiction based on the allegations in the Supplemental Complaint, which are taken as true. *See Menchaca*, 613 F.2d at 511.

In its Opposition, DuraPlas argues the Court has subject matter jurisdiction, pointing to particular allegations in the Supplemental Complaint. Opp'n at 15 (citing Supplemental Complaint at ¶¶ 79–84). According to DuraPlas, these allegations show that "DiversiTech has lobbed numerous accusations of and allusions to infringement by DuraPlas's PolarPad line in the marketplace and has specifically alleged (both to DuraPlas and to DuraPlas's actual and prospective customers) that the PolarPad products infringe the patents covering DiversiTech's E-Lite products." *Id.* As for which

patents, DuraPlas states that the "accusations and allusions" relate to the '440 and '653 Patents. *Id.*

Taking the allegations in the Supplemental Complaint as true, the Court concludes that they establish a case or controversy regarding the '440 Patent and the '653 Patent. In particular, the Supplemental Complaint alleges that, "beginning no later than December 2023, DiversiTech representatives began to contact DuraPlas customers and tell them that DuraPlas's PolarPad products faced unidentified 'issues' with DiversiTech's patents." Suppl. Compl. at ¶ 80. According to the Supplemental Complaint, these "issues" related to patent infringement: "These allegations persisted for over a year, with multiple customers and industry contacts reporting to DuraPlas that DiversiTech representatives and executives had accused its PolarPad products of *infringing DiversiTech patents*, including specifically *the patents covering DiversiTech's E-Lite line of plastic HVAC/R pad products*." *Id.* (emphases added). While these allegations do not allege DiversiTech identified any particular patent numbers, the Supplemental Complaint goes on to allege that "[t]he only patents assigned to and owned by DiversiTech that relate to the E-Lite line of products specifically or plastic HVAC/R pad products generally are a single patent family, currently made up of four patents:" the '653 Patent, the '440 Patent, U.S. Patent No. 12,312,123 (the "'123 Patent"), and U.S. Patent No. 12,319,468 (the "'468 Patent"). *Id.* at ¶ 84. Critically, the Supplemental Complaint also alleges that, "[a]s of January 31, 2025, . . . the '653 Patent and the '440 Patent were the only" two of these four patents "that had issued."

*Id.* at ¶ 84 n.2. As a result, during the relevant time covered by these allegations, infringement could have related only to the '440 Patent and the '653 Patent. Thus, the allegations in the Supplemental Complaint establish a case or controversy regarding infringement liability related to the '440 Patent and the '653 Patent.

In its Reply, DiversiTech argues DuraPlas's allegations "are entirely speculative" and based on a "mere listing of patents on a website or generalized statements about its patent portfolio." Reply at 5. But DuraPlas's allegations are sufficiently specific, not merely based upon a listing of patents on a website, and are not generalized statements about a patent portfolio but instead allegations of infringement by DuraPlas of the '440 Patent and the '653 Patent. Furthermore, while DiversiTech contends "unverified statements to unidentified customers at unspecified times and locations attributed to DiversiTech's CEO and one DiversiTech representative are not enough," the Court is required to take the allegations in the Supplemental Complaint as true. Reply at 6. And, as discussed above, if true then DiversiTech accused DuraPlas of infringing the '440 and '653 Patents. In short, the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *DataTern, Inc.*, 755 F.3d at 903 (quoting *MedImmune, Inc.*, 549 U.S. at 127.)

If the allegations in the Supplemental Complaint are true, the Court holds subject matter jurisdiction over Counts VI and VII because DuraPlas has met its burden to establish that there is a case or controversy regarding the '440 Patent and

the '653 Patent. As a result, the Court **DENIES** the Motion to the extent it requests dismissal of Counts VI and VII under Rule 12(b)(1).

### B.    Counts IV and XI

DiversiTech argues DuraPlas fails to adequately plead any ground to render the '123 Patent or the '468 Patent unenforceable. As a result, it seeks dismissal of Counts IV and Counts XI under Rule 12(b)(6). Def.'s Mot. at 1; Mem. in Supp. at 11–15.

In particular, DiversiTech argues "DuraPlas's inequitable conduct allegations rest on its flatly wrong contention that DiversiTech did not disclose the Hef-T-Pad product during prosecution of its applications." Mem. in Supp. at 12. This argument relates to the fact that the Supplemental Complaint alleges that the '123 Patent and the '468 Patent are "unenforceable due to inequitable conduct . . . due to DiversiTech's failure to disclose prior art of which it was aware and had been selling since before the priority date" of these patents. Suppl. Compl. at ¶¶ 159, 207. "Specifically," the Supplemental Complaint goes on to allege, "DiversiTech and its patent prosecution counsel . . . knowingly and willfully failed to disclose known material prior art in the form of at least the Hef-T-Pad Prior Art." *Id.* at ¶¶ 160, 208. The Supplemental Complaint goes on to allege that "DiversiTech . . . did not at any time during prosecution" of the applications that issued as the '123 Patent and the '468 Patent "disclose the Hef-T-Pad Prior Art . . . nor was the Hef-T-Pad Prior Art disclosed . . . [during] prosecution of any of the [relevant] parent applications." *Id.* at ¶¶ 164, 212. In sum, the Supplemental Complaint says, the "Hef-T-Pad Prior Art is not part of the

file history" of the '123 Patent and the '468 Patent, "is not listed on the face of" the
'123 Patent and the '468 Patent, and, "as such, the Examiner did not consider the Hef-
T-Pad Prior Art." *Id.*

Inequitable conduct must be pled with particularly under Rule 9(b). *See Exergen
Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326–27 (Fed. Cir. 2009). That is, "in
pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the
specific who, what, when, where, and how of the material misrepresentation or
omission committed before the [Patent and Trademark Office]." *Id.* at 1327. As a
result, the Court must consider the underlying details and standard necessary to prove
inequitable conduct. "To prevail on a claim of inequitable conduct, the accused
infringer must prove that the patentee acted with the specific intent to deceive the
PTO." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011)
(en banc). When inequitable conduct is based upon nondisclosure of prior art, the
accused infringer must prove by clear and convincing evidence that the patent applicant
knew of the prior art, knew that it was material to patentability, and nevertheless made
a deliberate decision to withhold it. *Id.* The "materiality required to establish
inequitable conduct is but-for materiality." *Id.* at 1291. When inequitable conduct is
based upon nondisclosure of prior art, the prior art is material "if the PTO would not
have allowed a claim had it been aware of the undisclosed prior art." *Id.* This analysis
requires determining "whether the PTO would have allowed the claim if it had been

aware of the undisclosed reference" giving the patent claims their broadest reasonable construction and using the preponderance of the evidence standard. *Id.* at 1291–92.

As DiversiTech argues, the exhibits to the Supplemental Complaint and public records show that the Hef-T-Pad was disclosed to the PTO. Exhibits J and Q to the Supplemental Complaint are Information Disclosure Statements submitted to the PTO during prosecution of the patent applications that issued as the '123 Patent and the '468 Patent, and both identify the "E Lite Plastic Equipment Pads Literature" as documents that were disclosed to the PTO. Moreover, Exhibit M to the Supplemental Complaint includes a copy of the '123 Patent, and it identifies the "E Lite Plastic Equipment Pads Literature" under "References Cited." Similarly, the '468 Patent identifies the "E Lite Plastic Equipment Pads Literature" under "References Cited." DiversiTech also attaches to its Motion exhibits that are public records showing that the patent examiner considered the "E Lite Plastic Equipment Pads Literature" during examination of the '123 Patent and the '468 Patent. Doc. No. 27 at Exs. F & H. Finally, DiversiTech attaches to its Motion an exhibit that is another public record, a copy of the "E Lite Plastic Equipment Pads Literature" from the prosecution history of the patents. *Id.* at Ex. D. Notably, the "E Lite Plastic Equipment Pads Literature" includes multiple pages expressly referencing and describing the "Hef-T-Pad" and includes photographs of the Hef-T-Pad. *Id.* at Ex. D, 4–5 & 24. In light of these exhibits and public records, the Court agrees that DuraPlas fails to state a claim of inequitable

conduct because it has failed to adequately allege nondisclosure of prior art and therefore intent to deceive. Mem. in Supp. at 11–14 & n.10.

In its Opposition, DuraPlas argues "DiversiTech did not make a 'complete disclosure' of the Hef-T-Pad product to the PTO and certainly did not disclose enough to avoid a claim of inequitable conduct." Opp'n at 7. But DuraPlas's Supplemental Complaint does not make these allegations. In short, DuraPlas fails to adequately plead any ground to render unenforceable the '123 Patent or the '468 Patent because the basis for the allegations in its Supplemental Complaint contradict the relevant exhibits and public records. *Simmons*, 113 F.2d at 813 (where there's conflict between allegations in a pleading and attached exhibits, the exhibits control). As a result, and in the absence of any reason for dismissing the underlying claims with prejudice, the Court **DISMISSES WITHOUT PREJUDICE** Counts IV and XI under Rule 12(b)(6) to the extent they allege unenforceability.

## C.    Counts V and XII

DiversiTech argues DuraPlas fails to adequately plead any ground to find non-infringement of the '123 Patent or the '468 Patent. As a result, it seeks dismissal of Counts V and XII under Rule 12(b)(6). Def.'s Mot. at 1; Mem. in Supp. at 11–15.

As DiversiTech argues, there is not any practicing the prior art defense to an allegation of infringement. *See 01 Communique Lab., Inc. v. Citrix Sys.*, 889 F.3d 735, 742 (Fed. Cir. 2018). The relevant defenses are invalidity or non-infringement. *Id.* at 742–43. With respect to the former, DuraPlas has adequately pleaded invalidity

because it alleges prior art renders at least one claim invalid based on anticipation or obviousness. Suppl. Compl. at ¶¶ 158 & 206, Exs. L & R. With respect to the latter, however, DuraPlas merely alleges that it does not infringe "any *valid* claim" and "cannot infringe any *valid* claim . . . because the PolarPad products merely *practice the prior art*." *Id.* at ¶¶ 172, 173, 220, & 221 (emphases added). This allegation confuses invalidity and non-infringement. To the extent DuraPlas wishes to bring a claim of non-infringement because it does not practice the elements of a claim of the '123 Patent or the '468 Patent, it must more clearly specify that that is what it is alleging.

As a result, and in the absence of any reason for dismissing the underlying claims with prejudice, the Court **DISMISSES WITHOUT PREJUDICE** Counts V and XII under Rule 12(b)(6).

### D.    Counts I–III

DiversiTech argues DuraPlas's allegations are insufficient to plausibly plead anticompetitive conduct. In particular, it argues DuraPlas's allegations of fraud on the PTO and anticompetitive patent enforcement efforts fail to overcome the presumption of good-faith assertions of patent rights and fail to meet the heightened pleading requirement for fraud under Federal Rule of Civil Procedure 9(b). It also argues DuraPlas's allegation of exclusive dealing does not plausibly allege that DiversiTech's bulk-purchasing rebate program forecloses a substantial share of the alleged plastic pad market because DiversiTech's customers were not obligated to purchase from it and instead could simply forego negotiated discounts and purchase from others. Def.'s Mot.

at 2; Mem. in Supp. at 17–23. DiversiTech also argues DuraPlas's allegations are insufficient to plausibly plead anticompetitive injury. In particular, it argues DuraPlas's allegations of injuries are vague and conclusory and DuraPlas does not allege injuries flowing from any anticompetitive conduct by DiversiTech. Def.'s Mot. at 2; Mem. in Supp. at 23–24. As a result, it seeks dismissal of Counts I–III under Rule 12(b)(6). Def.'s Mot. at 2.

With respect to Counts I and II, DuraPlas alleges DiversiTech engaged in anticompetitive conduct in three ways. First, DuraPlas alleges DiversiTech "[e]ngag[ed] in long-term conditional rebate programs and other loyalty-based agreements with major distributors and high-volume customers that effectively operate as de facto exclusive dealing arrangements." Suppl. Compl. at ¶¶ 131(a) & 140(a). Second, DuraPlas alleges DiversiTech "[t]hreaten[ed] to enforce patents knowingly and willfully procured through fraud on the [PTO] by intentionally withholding material prior art and making misleading statements during prosecution." *Id.* at ¶¶ 131(b) & 140(b). Third, DuraPlas alleges DiversiTech "[r]einforc[ed] and enhanc[ed] the effectiveness of the above exclusionary practices through threats and false claims made to distributors and end customers attempting to deal with DuraPlas, including baseless allegations of legal exposure, loss of rebates and access to products, or patent infringement." *Id.* at ¶¶ 131(c) & 140(c). With respect to Count III, DuraPlas alleges DiversiTech engaged in anticompetitive conduct based on allegations similar to the first and third allegations it uses to support Counts I and II. *Id.* at ¶¶ 149 & 151.

15

First, the Court will address DuraPlas's allegation that long-term conditional rebate programs and other loyalty-based agreements with major distributors and high-volume customers effectively operate as de facto exclusive dealing arrangements. Suppl. Compl. at ¶¶ 131(a) & 140(a).

"Exclusive dealing . . . occurs when a seller agrees to sell its output of a commodity to a particular buyer, or when a buyer agrees to purchase its requirements of a commodity exclusively from a particular seller." *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 625 (5th Cir. 2002). An "express exclusivity requirement" in an agreement, however, "is not necessary." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 270 (3d Cir. 2012). Courts "look past the terms of the contract to ascertain the relationship between the parties and the effect of the agreement 'in the real world.'" *Id.* As a result, "*de facto* exclusive dealing claims are cognizable under the antitrust laws." *Id.* While "[e]xclusive dealing agreements are often entered into for entirely procompetitive reasons, and generally pose little threat to competition," exclusive dealing can have adverse economic consequences by allowing one supplier to unreasonably deprive other suppliers of a market for their goods. *Id.* Given the potentially procompetitive benefits of exclusive dealing arrangements, they are judged under the rule of reason, and their legality turns on whether they will foreclose competition in such a substantial share of the relevant market that they adversely affect competition. *Id.* at 271.

16

The Court agrees with DuraPlas that it has sufficiently alleged that DiversiTech engaged in *de facto* exclusive dealing arrangements using long-term, not-easily-terminable contracts with significant volume commitments effectively preventing distributors from purchasing the relevant product from any other supplier at any meaningful volume. Suppl. Compl. at ¶¶ 60–66; *see, e.g.*, *ZF Meritor,* 696 F.3d at 282–83. The Court also agrees with DuraPlas that it has adequately pled that the alleged *de facto* exclusive dealing arrangements resulted in substantial foreclosure of competition in the relevant market. Suppl. Compl. at ¶ 63 (alleging the arrangements' "practical effect" is to foreclose "well over 40%" and "potentially closer to 80 or 90%" of the relevant market); *McWane, Inc. v. Fed. Trade Comm'n*, 783 F.3d 814, 837 (11th Cir. 2015) ("Traditionally a foreclosure percentage of at least 40% has been a threshold for liability in exclusive dealing cases. However, some courts have found that a lesser degree of foreclosure is required when the defendant is a monopolist.") (citation omitted).

Citing two cases, DiversiTech argues DuraPlas does not plausibly allege that DiversiTech's bulk-purchasing rebate program forecloses a substantial share of the alleged plastic pad market given that DiversiTech's customers were not obligated to purchase from it and instead could "simply forego the negotiated discounts" and purchase from others instead. Mem. in Supp. at 22 (citing *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 997 (9th Cir. 2010); *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 407 (3d Cir. 2016)). But in *Allied Orthopedic Appliances Inc.*, the Court noted that the agreements in question were "easily terminable" and cited

17

a source indicating "[d]iscounts conditioned on exclusivity in *relatively short-term contracts* are rarely problematic," 592 F.3d at 997 (quoting XI Philip E. Areeda & Herbert Hovenkamp, Antitrust Law, ¶ 1807a at 129 (2d ed. 2000)) (emphasis added). Here, by contrast, DuraPlas alleges the agreements in question are "structured to provide significant financial incentives only if the distributor sources a high percentage (typically 80% to 90%) of its plastic pad requirements from DiversiTech *over a multi-year period*." Suppl. Compl. at ¶ 66 (emphasis added). Moreover, DuraPlas alleges "DiversiTech has exercised its market power to anticompetitively exclude DuraPlas from the plastic pad market through the use of long-term and not easily terminable, de facto exclusive dealing arrangements structured as conditional rebate programs." *Id.* at ¶ 60. And while in *Eisai* the court held that "the threat of a lost discount" did not rise to the level of anticompetitive conduct, it did not given a "fail[ure] to demonstrate that hospitals were foreclosed from purchasing competing drugs as a result of [this] conduct." *Eisai*, 821 F.3d at 407. By contrast, DuraPlas alleges "the practical effect of these arrangements is to foreclose well over 40% of the plastic pad market (and, given the required volume commitments and DuraPlas's stalled efforts to contest further share, potentially closer to 80% or 90%). Suppl. Compl. at ¶ 63. Notably, neither *Allied Orthopedic Appliances* nor *Eisai* addressed a motion to dismiss for failure to state a claim. The Court agrees with DuraPlas that the question of whether distributors were free to forego these agreements rather than being coerced into keeping them is a factual question more appropriate for discovery.

18

Second, the Court will address DuraPlas's allegation that DiversiTech threatened to enforce patents knowingly and willfully procured through fraud on the PTO by intentionally withholding material prior art and making misleading statements during prosecution. Suppl. Compl. at ¶¶ 131(b) & 140(b).

Federal law "recognizes a presumption that the assertion of a duly granted patent is made in good faith." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998). "[T]his presumption is overcome only by affirmative evidence of bad faith." *Id.* Communicating with possible infringers about patent rights "is not improper if the patent holder has a good faith belief in the accuracy of the communication." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998). As a result, a patent holder, "acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though he may misconceive what those rights are." *Id.* (quotation marks omitted) (quoting *Kaplan v. Helenhart Novelty Corp.*, 182 F.2d 311, 314 (2d Cir. 1950)).

Here, DuraPlas's allegations of anticompetitive conduct on the basis of DiversiTech's patent enforcement efforts are based on allegations of "fraud on the [PTO] by intentionally withholding material prior art and making misleading statements during prosecution." Suppl. Compl. at ¶¶ 131(b) & 140(b). For the same reasons discussed above with respect to Counts IV and XI, in light of the relevant exhibits and public records, DuraPlas fails to state a claim of fraud on the PTO by intentionally withholding material prior art because it has failed to adequately allege

19

nondisclosure of prior art and therefore intent to deceive. In short, as discussed above, the relevant exhibits and public records show that the Hef-T-Pad was disclosed to the PTO. Moreover, the Supplemental Complaint fails to state a claim of fraud on the PTO by making misleading statements during prosecution. In short, there do not appear to be any specific allegations in the Supplemental Complaint of misleading statements made to the PTO during prosecution. Thus, DuraPlas fails to state a claim of anticompetitive conduct on the basis of DiversiTech's patent enforcement efforts.

Third, the Court will address DuraPlas's allegation that DiversiTech "reinforc[ed] and enhanc[ed] the effectiveness of the above exclusionary practices through threats and false claims to distributors and end customers attempting to deal with DuraPlas, including baseless allegations of legal exposure, loss of rebates and access to products, or patent infringement." Suppl. Compl. at ¶¶ 131(c) & 140(c).

With respect to alleged threats of loss of rebates and access to products, the Supplemental Complaint fails to state a claim of anticompetitive conduct. The Supplemental Complaint alleges "DiversiTech arranged for meetings with at least one prospective distributor in discussions with DuraPlas, insinuating there would be 'repercussions' restricting the 'overall access to all DiversiTech products.'" *Id.* at ¶ 112. But the Court agrees with DiversiTech that this allegation does not specify that this distributor was party to any kind of discount arrangement with DiversiTech. Furthermore, the allegation is merely an "insinuation" of restricted overall access to DiversiTech products; there is no specific allegation that DiversiTech actually

20

threatened to restrict access to its products. In short, this allegation does not allow the Court to draw a reasonable inference that DiversiTech has engaged in the alleged anticompetitive conduct. *Iqbal*, 556 U.S. at 678. Thus, DuraPlas fails to state a claim of anticompetitive conduct on the basis of alleged threats of loss of rebates and access to products.

With respect to alleged threats and false claims of legal exposure and patent infringement, the Supplemental Complaint repeatedly alleges threats of assertion of fraudulently obtained patents. Suppl. Compl. at ¶¶ 49, 69, 110, 116. As discussed above, communicating with possible infringers about patent rights "is not improper if the patent holder has a good faith belief in the accuracy of the communication." *Mikohn Gaming Corp.*, 165 F.3d at 897. Here, the only basis for alleged bad faith, fraud on the PTO, is the alleged failure to disclose the Hef-T-Pad product. But, for the same reasons discussed above with respect to Counts IV and XI, in light of the relevant exhibits and public records, DuraPlas fails to state a claim of fraud on the PTO by intentionally withholding material prior art because it has failed to adequately allege nondisclosure of prior art and therefore intent to deceive. In short, as discussed above, the relevant exhibits and public records show that the Hef-T-Pad was disclosed to the PTO. Thus, DuraPlas fails to state a claim of anticompetitive conduct on the basis of alleged threats of legal exposure and patent infringement.

Finally, the Court will address DiversiTech's argument that DuraPlas's allegations are insufficient to plausibly plead anticompetitive injury.

In short, the Court disagrees. First, DuraPlas's allegations of injury are not vague and conclusory. The Supplemental Complaint includes allegations that DuraPlas has lost market share, been excluded from the market, and suffered lost sales, reputational harm, diminished goodwill, and lost business relationships. *See, e.g.*, Suppl. Compl. at ¶ 57 ("But for DiversiTech's anticompetitive, tortious, and illegal conduct described below, DuraPlas would be able to contest an even greater portion of DiversiTech's share."); *id.* at ¶ 60 ("DiversiTech has exercised its market power to anticompetitively exclude DuraPlas from the plastic pad market through the use of long-term and not easily terminable, de facto exclusive dealing arrangements structured as conditional rebate programs."); *id.* at ¶ 120 ("DuraPlas estimates that, as a direct and proximate result of DiversiTech's anticompetitive, tortious, and unlawful conduct, it and previous competitors that have since been acquired by DiversiTech have been foreclosed from accessing millions of dollars of sales opportunities. In addition to these lost sales, DiversiTech's conduct has caused DuraPlas to suffer reputational harm, diminished goodwill, lost business relationships, and other consequential damages that continue to adversely impact DuraPlas's competitive standing in the market.").

Second, DuraPlas does allege these injuries flow from anticompetitive conduct by DiversiTech. *See, e.g.*, *id.* at ¶ 57 ("But for DiversiTech's anticompetitive, tortious, and illegal conduct described below, DuraPlas would be able to contest an even greater portion of DiversiTech's share."); *id.* at ¶ 60 ("DiversiTech has exercised its market power to anticompetitively exclude DuraPlas from the plastic pad market through the

use of long-term and not easily terminable, de facto exclusive dealing arrangements structured as conditional rebate programs."); *id.* at ¶ 120 ("DuraPlas estimates that, as a direct and proximate result of DiversiTech's anticompetitive, tortious, and unlawful conduct, it and previous competitors that have since been acquired by DiversiTech have been foreclosed from accessing millions of dollars of sales opportunities. In addition to these lost sales, DiversiTech's conduct has caused DuraPlas to suffer reputational harm, diminished goodwill, lost business relationships, and other consequential damages that continue to adversely impact DuraPlas's competitive standing in the market.").

As a result, and in the absence of any reason for dismissing the underlying claims with prejudice, the Court **DISMISSES WITHOUT PREJUDICE** Counts I–III under Rule 12(b)(6) to the extent they allege anticompetitive conduct on the basis of DiversiTech's patent enforcement efforts and on the basis of threats and false claims. But the Court **DENIES** the Motion as to Counts I–III to the extent they are based on the allegation of de facto exclusive dealing arrangements and resulting antitrust injury.

### E.    Counts VIII–X

DiversiTech argues DuraPlas's claim under the Texas Antitrust Act (Count VIII) must be dismissed because it relies on the same conduct as the federal claims that are subject to dismissal. DiversiTech argues DuraPlas's claims for unfair competition and tortious interference with prospective business relations (Counts IX and X) both require an independently tortious or unlawful act, but DuraPlas offers nothing separate

to support these claims beyond its insufficient federal antitrust allegations. As a result, it seeks dismissal of Counts VIII–X under Rule 12(b)(6). In response, DuraPlas argues the Court should deny the motion to dismiss all the state law claims underlying Counts VIII–X because it adequately pled its federal claims. Opp'n at 25.

Given that the parties agree these state law claims rise or fall with their associated federal claims, for the reasons discussed above, and in the absence of any reason for dismissing the underlying claims with prejudice, the Court **DISMISSES WITHOUT PREJUDICE** Counts VIII–X under Rule 12(b)(6) to the extent they are based on DiversiTech's patent enforcement efforts and alleged threats and false claims. But the Court **DENIES** the Motion as to Counts VIII–X to the extent they are based on the allegation of de facto exclusive dealing arrangements and resulting injury.

### IV.    Conclusion

For the reasons stated above, the Court hereby **DISMISSES WITHOUT PREJUDICE**: (1) Counts IV and XI under Rule 12(b)(6) to the extent they claim unenforceability; (2) Counts V and XII under Rule 12(b)(6); (3) Counts I–III under Rule 12(b)(6) to the extent they claim anticompetitive conduct on the basis of DiversiTech's patent enforcement efforts and alleged threats and false claims; and (4)

Counts VIII–X under Rule 12(b)(6) to the extent they assert claims based on DiversiTech's patent enforcement efforts and alleged threats and false claims.

Any request for dismissal not specifically granted herein is **DENIED**.

**SO ORDERED.**

Signed February 25th, 2026.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE