IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DURAPLAS, LP, | § | |
| | § | |
| Plaintiff-Counterclaim Defendant, | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-1310-K |
| | § | |
| DIVERSITECH CORPORATION, | § | |
| | § | |
| Defendant-Counterclaim Plaintiff. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff-Counterclaim Defendant DuraPlas, LP's ("DuraPlas") Motion for Protective Order (the "Motion") (Doc. No. 167 (unsealed version) and Doc. No. 169-1 (sealed version)), Appendix in Support of Plaintiff DuraPlas, LP's Motion for Protective Order (Doc. Nos. 168-1–168-10 (unsealed exhibits) and Doc. Nos. 169-2–169-3 (sealed exhibits)) (the "Appendix"), Defendant-Counterclaim Plaintiff DiversiTech Corporation's ("DiversiTech") Opposition to DuraPlas, LP's Motion for Protective Order (Doc. No. 175) (the "Opposition"), and Plaintiff DuraPlas, LP's Reply in Support of Its Motion for Protective Order (Doc. No. 186) (the "Reply"). The Court has carefully considered the Motion, Appendix, Opposition, and Reply, as well as the applicable law and the relevant portions of the record. The Court finds that DuraPlas has established that the requested relief is warranted. Accordingly, the Court **GRANTS** the Motion.

1

## I.    Background

This is a patent infringement case. Among other things, DuraPlas seeks a declaratory judgment that its Version 1 PolarPad products did not infringe certain patents owned by DiversiTech. In response, DiversiTech has asserted, among other things, that the Version 1 PolarPad products did infringe certain DiversiTech patents. Notably, DuraPlas says that it is no longer selling the Version 1 PolarPad products.

As relevant here, DuraPlas filed its Motion requesting a protective order "allowing it to engage in a targeted recycling of its withdrawn Version 1 PolarPad inventory" and "preventing DiversiTech from using unfounded spoliation accusations to interfere with DuraPlas's good-faith business operations." Doc. No. 167 at 4 (all citations to CM/ECF page numbers unless otherwise noted). DuraPlas explains that it "has begun recycling its excess Version 1 PolarPad inventory by removing the isolated Version 1 pads from its warehouse, regrinding them, and recasting the material into other products." *Id.* It says it "is undertaking this process because continued storage of obsolete Version 1 inventory imposes substantial and unnecessary warehousing and handling costs, and because DuraPlas needs that space for its Version 2 operations." *Id.* at 4–5. According to DuraPlas, it "has ensured that all information relevant to the disputed rib structure and other asserted patent issues is preserved" by "document[ing] the Version 1 inventory through internal records and a third-party auditor" as well as "preserv[ing] representative physical samples of Version 1 pads sufficient for any legitimate discovery or expert examination[.]" *Id.* at 5. DuraPlas specifically requests

"a protective order (1) confirming that its documented recycling of Version 1 inventory does not violate any preservation duty; (2) prohibiting DiversiTech from demanding that DuraPlas indefinitely warehouse all Version 1 PolarPads; and (3) barring DiversiTech from using DuraPlas's recycling of Version 1 PolarPad inventory as a basis for sanctions, adverse inferences, or any other litigation advantage in this action." *Id.* at 6. In support of this relief, DuraPlas argues it has satisfied its duty to preserve evidence by retaining representative samples and documents related to its Version 1 PolarPad inventory, there is no basis for concluding its proposed recycling stems from bad faith, and the recycling would not prejudice DiversiTech. *Id.* at 13–17.

In its Opposition, DiversiTech argues the Motion should be denied and DuraPlas "should not be permitted to continue to destroy evidence without providing basic information about what has already been destroyed[.]" Doc. No. 175 at 4. Alternatively, it says, the Court should deny the motion "without prejudice to renewal but only *after* (a) DuraPlas provides evidence identifying the specific dates it began destroying V1 inventory and the number and types of V1 pads destroyed, (b) DiversiTech is provided with the opportunity to test that evidence, as well as the statements made in the declaration of Paul Phillips submitted with DuraPlas's motion, via deposition, and (c) DuraPlas permits DiversiTech to inspect the remaining V1 pads it has not yet destroyed so that the parties may coordinate on which V1 pads should be maintained as representative samples." *Id.* (emphasis original). DiversiTech argues DuraPlas's "unilateral" and "undisclosed" decision to destroy its V1 inventory was

improper, that DuraPlas has not shown good cause because the evidence DuraPlas provides with its Motion is "insufficient and wholly conclusory," and that DuraPlas "does not seek this protective order with clean hands." *Id.* at 10–16.

In its Reply, DuraPlas highlights how, in its separate filing seeking a temporary restraining order, DiversiTech asked the Court to order DuraPlas "to '*destroy* or surrender' any remaining V1 PolarPads[.]" Doc. No. 186 at 4 (quoting DiversiTech's Reply in Support of Its Emergency Motion for Reconsideration of Order Denying Temporary Restraining Order and Preliminary Injunction and Brief in Support (Doc. No. 181 at 9)) (emphasis added). As explained by DuraPlas, "[w]ithin the course of one week, ***DiversiTech has asked this Court to order DuraPlas to destroy the same V1 inventory*** even as it opposes DuraPlas's request for a protective order allowing DuraPlas to recycle that same inventory pursuant to a documented preservation protocol." *Id.* (emphasis original). DuraPlas argues the separate request to order destruction of the V1 PolarPads "reveals the true nature" of DiversiTech's opposition, which is "not grounded in preservation concerns, but in an effort to control the manner in which DuraPlas operates its business and to impose unnecessary burdens that hinder DuraPlas's ability to compete with DiversiTech." *Id.* at 5–6. DuraPlas also argues DiversiTech "fails to identify any evidence that will be lost or any prejudice," DiversiTech "has not shown any entitlement to inspect DuraPlas's 'facilities,'" DiversiTech is not entitled to "dictate DuraPlas's preservation methodology or control

sample selection," and DuraPlas "has no duty to disclose business 'secrets'" including its plan to transition to a second version of the PolarPad. *Id.* at 6–13.

## II.    Standard of Review

Under Federal Rule of Civil Procedure 26(c)(1), a party "may move for a protective order in the court where the action is pending" to protect it "from . . . undue burden or expense" upon a showing of "good cause" and with a "certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

## III.    Analysis

After patent infringement lawsuits commence, alleged infringers—even in the absence of orders expressly permitting them to do so, but only in the absence of preliminary injunctions—may continue to sell allegedly infringing products. While preliminary injunctions may be denied for various reasons, it is notable that, while there is a public interest in the protection of patent rights, there is a counterbalancing right to compete that may outweigh the interest in the protection of patent rights. *See Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 684 (Fed. Cir. 1990)

5

("Recognizing a public interest in the protection of patent rights, the district court deemed that interest counterbalanced in this case by Grip–Pak's continuing right to compete, which must be seen as legitimate at this motion stage in view of ITW's 'remote' showing of likelihood of success in proving infringement at trial. We find no error in that approach in this case."). As applied here, the Court has not granted any injunction in this case. Thus, it is not disputed that DuraPlas may dispose of the allegedly infringing products through sales.

Here, however, DuraPlas does not seek to dispose of the allegedly infringing products through sales but instead to destroy most (though not all) of its allegedly infringing products. In many cases the patent owner seeks an order requiring just that, the destruction of infringing products. *See Bose Corp. v. JBL, Inc.*, 112 F. Supp. 2d 138, 170 (D. Mass. 2000), *aff'd*, 274 F.3d 1354 (Fed. Cir. 2001) ("Although some courts have issued injunctions ordering the destruction of remaining infringing inventory, . . . this remedy seems extraordinarily wasteful.") (citation omitted). But DiversiTech opposes this relief.

The Court finds good cause to allow DuraPlas to destroy all but representative samples of the Version 1 PolarPad products pursuant to Rule 26(c)(1). In particular, the Court finds DuraPlas has met its burden to show the necessity of a protective order to protect it from undue burden and expense given particular and specific evidence indicating unnecessary costs storing rather than recycling its Version 1 PolarPad inventory. *See* Doc. No. 169-2 at 4–5, ¶14. Storing this inventory rather than recycling

it is burdensome and expensive given how the warehouse space storing it displaces a substantial volume and associated sales of non-accused inventory, the substantial cost of renting additional space to store it, the substantial cost of handling and supervising it, and the substantial cost of buying new material for other products rather than using recycled material. *Id.* Storing this inventory is also unnecessary given the lack of any unique aspect of it in the context of this case and the circumstances. This is a patent infringement case dependent upon the design of the allegedly infringing products rather than, for example, manufacturing defects, and, regardless, DuraPlas has committed to retain relevant documents and samples. DuraPlas has also provided a certification as well as evidence that it has in good faith conferred with DiversiTech in an effort to resolve this dispute without the Court's action. *See* Doc. No. 167 at 19; Doc. Nos. 168-9 & 168-10 (counsel correspondence). In short, DuraPlas has met all the requirements for a protective order.

Neither party cites any opinion granting or denying the requested relief in the present type of case—a patent infringement case. Instead, the parties dispute the applicability of a district court's grant of a protective order allowing destruction of "the majority of the product" in a "putative product-liability class action," where the defendant "discovered that such products were potentially contaminated with beetle parts and/or beetle larvae." *See Brandner v. Abbott Lab'ys, Inc.*, No. CIV.A. 10-3242, 2011 WL 2457683, at *1 (E.D. La. June 16, 2011), *order amended on reconsideration*, No. CIV.A. 10-3242, 2011 WL 4853384 (E.D. La. Oct. 13, 2011). In that case, the court

recognized that "[c]ourts have not hesitated to issue protective orders . . . when the cost of maintaining a recalled product poses an undue burden." *Id.* at *3. That court granted the underlying motion subject to a requirement to retain "unopened, uncompromised units that were recalled" and a commitment by the defendant to work with the plaintiff's counsel "to retain the best representative sample." *Id.* at *4. Here, the Court similarly finds that issuing a protective order allowing destruction of V1 PolarPad products in this case, a patent infringement case, is appropriate because the cost of maintaining those products poses an undue burden and the accused infringer has committed to retain representative samples and documents related to those products. Unlike in *Brandner*, however, the Court will not require agreement on representative samples and documents given that this is a patent infringement case related to the design of the accused products rather than a product-liability class action related to alleged manufacturing defects.

With respect to *Brandner*, DiversiTech identifies three ways to distinguish the case. First, it points out, "in contrast to *Brandner*, no governmental agency has recommended the destruction of DuraPlas's inventory." Doc. No. 175 at 13. Second, it says, "unlike the *Brandner* defendants, DuraPlas has not and does not propose that it will coordinate with DiversiTech in order to identify representative samples of the V1 PolarPads[.]" *Id.* Third, it continues, the initial order in *Brandner* permitting destruction "was amended on reconsideration" to note that nothing in the first order condoned or immunized any alleged spoliation by defendants that occurred before the

8

issuance date of the first order. *Id.* at 12, n.6. DiversiTech's objections related to *Brandner* do not withstand scrutiny. First, the lack of a government agency recommendation to destroy the accused products does not eliminate the unnecessary cost of storing rather than recycling them. Second, as already discussed, the Court does not find coordination or agreement on representative samples to be necessary given the focus on the design of the accused product here. Third, here, the Court similarly has not condoned or immunized any alleged spoliation that occurred before the issuance of this Order.

None of DiversiTech's other objections overcome the Court's conclusion that DuraPlas has shown good cause for the requested relief. While DiversiTech desires information about what DuraPlas has already destroyed, including the dates DuraPlas began destroying V1 inventory and the number and types of V1 pads already destroyed as well as deposition testimony related to this information, it can gain that information and testimony through the normal discovery process. Next, while DiversiTech suggests it should be entitled to an inspection and coordination related to representative samples, it has not demonstrated any need for either. In this regard, the Court again notes that this is a patent infringement case rather than a product-liability class action, and the Court highlights how DuraPlas's counsel has specifically represented that DuraPlas "has preserved representative physical samples of Version 1 pads sufficient for any legitimate discovery or expert examination[.]" Doc. No. 167 at 5. As for DiversiTech's complaint about DuraPlas's "unilateral" and "undisclosed" decision to

recycle its products, DuraPlas ultimately did disclose to DiversiTech its decision to recycle V1 pads and it ultimately sought permission to do so through its Motion. Next, despite DiversiTech's argument to the contrary, DuraPlas's evidence is not insufficient or wholly conclusory; rather, as discussed above, its Appendix identifies specific burdens and costs. Finally, the Court rejects the idea that DuraPlas seeks the protective order with unclean hands given the inability of DiversiTech to identify any potential unique aspect of any destroyed product, and the Court agrees with DuraPlas that DiversiTech has failed to identify any evidence that has been or will be lost or, more broadly, any actual prejudice.

Finally, regardless of all the above analysis, the Court finds that DiversiTech waived its objection to the relief requested in the Motion when it argued the following in separate briefing in this case:

> Specifically, *DiversiTech now requests an order . . . . requiring DuraPlas to destroy* or surrender to DiversiTech *any V1 PolarPads remaining in DuraPlas's possession, custody, or control* (including pads returned through part (d)), with verification by sworn declaration—an obligation that simply makes enforceable DuraPlas's existing voluntary representations . . . .

DiversiTech's Reply in Support of Its Emergency Motion for Reconsideration of Order Denying Temporary Restraining Order and Preliminary Injunction and Brief in Support (Doc. No. 181 at 9) (emphases added).

### IV.   Conclusion

As explained, DuraPlas has established that the requested relief is warranted. As a result, the Court hereby **GRANTS** the Motion as follows. The Court hereby:

(1) confirms that DuraPlas does not violate any preservation duty to the extent it recycles Version 1 PolarPad inventory while simultaneously preserving related documentation and representative samples;

(2) confirms that DuraPlas is not required indefinitely to warehouse all Version 1 PolarPads; and

(3) bars DiversiTech from using DuraPlas's recycling of Version 1 PolarPad inventory consistent with the terms of this Order as a basis for sanctions, adverse inferences, or any other litigation advantage in this action.

**SO ORDERED.**

Signed July 27th, 2026.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE