IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DURAPLAS, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-1310-K |
| | § | |
| DIVERSITECH CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff's Motion for Leave to File First Amended Complaint (Doc. No. 123) (the "Motion"), DiversiTech Corporation's Opposition to DuraPlas LP's Motion for Leave to File an Amended Complaint (Doc. No. 153) (the "Opposition"), and Plaintiff's Reply in Support of Its Motion for Leave to File First Amended Complaint (Doc. No. 165) (the "Reply"). Also before the Court are DiversiTech Corporation's Motion for Leave to File a Surreply in Connection with DuraPlas, LP's Motion for Leave to Amend, and Brief in Support (Doc. No. 170) (the "Motion for Leave"), Plaintiff DuraPlas, LP's Opposition to Defendant DiversiTech Corporation's Motion for Leave to File Surreply (Doc. No. 184) (the "Opposition to Motion for Leave"), and DiversiTech Corporation's Reply in Further Support of Its Motion for Leave to File a Surreply in Connection with DuraPlas, LP's Motion for Leave to Amend (Doc. No. 187) (the "Reply in Support of Motion for Leave"). And

finally, also before the Court is DiversiTech's Motion for Leave to File Under Seal the First Amended Complaint (Doc. Nos. 144, 146) (the "Motion to Seal").

The Court has carefully considered the Motion, the Opposition, and the Reply; the Motion for Leave, the Opposition to Motion for Leave, and the Reply in Support of Motion for Leave; the Motion to Seal; as well as the exhibits to these filings, including Plaintiff's First Amended Complaint (Exhibit 1 to Doc. No. 123 (sealed version) and Exhibit 1 to Doc. No. 145 (unsealed version)) (the "First Amended Complaint") and DiversiTech Corporation's Surreply in Opposition to DuraPlas, LP's Motion for Leave to Amend (Doc. No. 170-1) (the "Sur-Reply"), and the applicable law.

As an initial matter, for the reasons stated below, DiversiTech's Motion for Leave is **GRANTED**, and the Court has considered the Sur-Reply in reaching its decision on the Motion. For the reasons stated below, the Court also **GRANTS** DuraPlas's Motion. Even considering the Sur-Reply, the outcome remains unchanged. And for the reasons stated below, the Court **DENIES WITHOUT PREJUDICE** the Motion to Seal. Should DiversiTech wish to file a renewed motion to seal, it may do so **no later than seven (7) days after the entry of this Order**.

## I. Background

In Plaintiff's Original Complaint filed May 26, 2025 (the "Original Complaint"), Plaintiff DuraPlas, LP ("DuraPlas") asserted ten claims against Defendant DiversiTech Corporation ("DiversiTech"). Doc. No. 1. In Plaintiff's Supplemental Complaint filed

June 2, 2025, and entered by the Court on June 17, 2025 (the "Supplemental Complaint"), DuraPlas added allegations and exhibits relating to facts arising after May 26, 2025. *See* Doc. Nos. 11, 22, 23.

On February 25, 2026, the Court granted in part and denied in part a motion filed by DiversiTech to dismiss the Supplemental Complaint. Doc. No. 109 (the "Dismissal"). Specifically, the Court dismissed without prejudice (1) Counts IV and XI under Rule 12(b)(6) to the extent they claim unenforceability; (2) Counts V and XII under Rule 12(b)(6); (3) Counts I–III under Rule 12(b)(6) to the extent they claim anticompetitive conduct on the basis of DiversiTech's patent enforcement efforts and alleged threats and false claims; and (4) Counts VIII–X under Rule 12(b)(6) to the extent they assert claims based on DiversiTech's patent enforcement efforts and alleged threats and false claims. *Id.* at 24–25.

### A. The Motion and Related Briefing

On March 11, 2026, DuraPlas filed the Motion, which seeks permission to file the First Amended Complaint. According to DuraPlas, the First Amended Complaint "addresses the deficiencies outlined" in the Dismissal and "supplements" DuraPlas's "claims with facts uncovered during discovery and with allegations regarding DiversiTech's improper representation in a communication to its customers that this Court's Order on DiversiTech's Motion to Dismiss held that 'all of DiversiTech's patents in relation to [its] pads are valid.'" Motion at 2. In support of the Motion, DuraPlas argues "there has been no undue delay," it "has not acted in bad faith or with

dilatory motive," its "proposed amendment is not futile," "there will be no prejudice to DiversiTech because the proposed First Amended Complaint does not 'fundamentally alter the nature of the case,'" and "there is a well-settled presumption, especially in antitrust cases, where the discovery necessary to sufficiently state a claim is often in defendants' hands alone, that plaintiffs be afforded at least one opportunity to amend following entry of an order granting a motion to dismiss." *Id.* at 2–5. In more detail, DuraPlas explains that it seeks to amend its patent-related unenforceability allegations to include a partial disclosure theory of inequitable conduct related to the "Hef-T-Pad" prior art as well as allegations related to U.S. Patent No. 12,522,399 ("the '399 patent"), including a new claim for declaratory judgment of invalidity of the '399 Patent. *Id.* at 4–5. According to DuraPlas, these amendments "in turn cure the deficiencies the Court identified in DuraPlas' dismissed antitrust claims." *Id.* Finally, DuraPlas says, it seeks to amend its antitrust allegations "based on newly uncovered evidence." *Id.*

In its Opposition, DiversiTech argues permission to file the First Amended Complaint should not be given because DuraPlas engaged in "bad faith litigation tactics" by waiting to seek leave to amend its Supplemental Complaint until after the Court issued its decision on DiversiTech's motion to dismiss. Opposition at 9–13. DiversiTech also argues leave should be denied because DuraPlas "unduly delayed" seeking to plead its "partial disclosure" theory of inequitable conduct and because "the proposed amendment will prejudice DiversiTech." *Id.* at 13–16. According to

DiversiTech, moreover, leave should be denied because the inequitable conduct claims and the challenge to the validity of the ’399 Patent are futile. *Id.* at 16–25. With respect to the inequitable conduct claims, DiversiTech maintains the proposed amendments fail to state a claim. *Id.* In more detail, DiversiTech argues that DuraPlas cannot plead but-for materiality because the Hef-T-Pad was disclosed to the Patent and Trademark Office (“PTO”). *Id.* DiversiTech also argues that DuraPlas has not and cannot plead specific intent to deceive. *Id.* With respect to the invalidity claim, DiversiTech contends an invalidity claim based on prior art that was disclosed and considered by the PTO “must allege facts sufficient to ‘overcom[e] the deference that is due to a qualified government agency presumed to have done its job.” *Id.* at 25 (quoting *U.S. Rubber Recycling, Inc. v. ECORE Int’l Inc.*, No. CV0909516SJOOPX, 2011 WL 13043496, at *4 (C.D. Cal. Apr. 11, 2011), *aff’d*, 503 F. App’x 951 (Fed. Cir. 2013)).

In its Reply, DuraPlas argues it has not engaged in bad faith litigation tactics, that its motion is neither unduly delayed nor prejudicial, and that its proposed amendments are not futile. Reply at 1–5. With respect to futility, it highlights that DiversiTech does not allege that its new antitrust allegations are futile. *Id.* at 5–6. DuraPlus next argues the proposed amendments related to invalidity are not futile because DiversiTech’s position “rests on the incorrect legal premise that prior art considered by the examiner cannot support invalidity.” *Id.* at 6–7. Finally, DuraPlas maintains the amendments related to inequitable conduct are not futile because the First Amended Complaint “does not allege mere nondisclosure or aggressive advocacy.”

*Id.* at 7–10. Rather, DuraPlas argues, the First Amended Complaint alleges that "DiversiTech and its agents knew of an invalidating reference, disclosed only limited information about the reference that concealed its most material features, thus preventing the examiner from understanding how the reference bore on patentability, and then advanced false and misleading arguments premised on that same omission." *Id*.

### B. The Motion for Leave and Related Briefing

Following DuraPlas's Reply, DiversiTech filed the Motion for Leave. In it, DiversiTech argues it should be permitted leave to file the Sur-reply "to address new, and demonstrably false, assertions" raised in the Reply. Motion for Leave at 1. According to DiversiTech, in the Reply DuraPlas raised "multiple new factual contentions that contradict publicly-available, and judicially-noticeable information from the PTO." *Id.* at 2.

In the Opposition to Motion for Leave, DuraPlas takes the position that DiversiTech "does not respond to new arguments raised for the first time" in DuraPlas's Reply. Opposition to Motion for Leave at 1. Furthermore, according to DuraPlas, the Sur-reply would not assist the Court because the arguments are immaterial. *Id.* at 2–6. Moreover, it says, the Reply did not raise new arguments but instead directly responded to DiversiTech's Opposition. *Id.* at 7. Finally, DuraPlas argues there is no risk of prejudice to DiversiTech from denial of the Motion for Leave. *Id.* at 8.

In the Reply in Support of Motion for Leave, with respect to the merits of the Motion for Leave, DiversiTech contends the Reply "raised a new argument concerning the availability of the relevant Hef-T-Pad disclosures that was not raised at all in its motion for leave to amend, or at any point prior." Reply in Support of Motion for Leave at 5. Moreover, it says, the Sur-Reply "will assist the Court in understanding the actual public record, impose no meaningful prejudice on DuraPlas, and prevent DuraPlas from making yet another false contention of fact without allowing DiversiTech the opportunity to respond." *Id.*

The Court also briefly notes how, in its Reply in Support of Motion for Leave, DiversiTech makes numerous significant allegations about DuraPlas's conduct in this lawsuit. For example, DiversiTech alleges DuraPlas "failed to comply with Rule 11 when it commenced this action." Reply in Support of Motion for Leave at 1. It also asserts DuraPlas has made "false allegations," "false explanations," "knowingly false" representations, and "misrepresentations" and engaged in "gamesmanship," "bad faith," and "ongoing misconduct." Reply in Support of Motion for Leave at 1–5. DiversiTech goes so far as to cite Texas Disciplinary Rule of Professional Conduct 3.01. *Id.* at 2 n.4. The Court notes that none of DiversiTech's allegations appear to be relevant to the merits of DiversiTech's Motion for Leave and that DiversiTech has not requested, let alone filed, any motion for sanctions. Nevertheless, given the significance of these allegations, the Court takes this opportunity to make it clear that the Court has not seen evidence supporting DiversiTech's allegations.

### C. The Sur-Reply

In the Sur-Reply, DiversiTech contends DuraPlas's assertions "that the E Lite Catalog . . . was not accessible through the PTO's public portal and therefore was not among the information available when DuraPlas filed and supplemented its original complaint" are "wrong and contradict the public record." Sur-Reply at 1. In particular, DiversiTech points to DuraPlas's "specific claim that that the E Lite Catalog . . . 'was not accessible through the PTO's public patent portal' and was not among 'the information available to DuraPlas at th[e] time' it filed its initial and supplemental complaints on May 26, 2025 and June 2, 2025." *Id.* DiversiTech also says DuraPlas's statement that, "'[e]ven now, the public file histories on the PTO website do not include the E-Lite catalog' is also wrong." *Id.* at 1–2.

Notably, DuraPlas asserted inequitable conduct in the Original Complaint with respect to U.S. Patent No. 12,312,123 (the "'123 Patent"), Doc. No. 1 at ¶ 151, and in the Supplemental Complaint with respect to the'123 Patent and U.S. Patent No. 12,319,468 (the "'468 Patent"), Doc. No. 23 at ¶¶ 159, 207. The '123 Patent and '468 Patent arise from applications that claim priority to U.S. Patent No. 11,794,440 (the "'440 Patent").

DiversiTech explains that, "[w]hile the PTO's website does not allow an individual to download or view the *certified* file wrapper, the PTO website includes links that permit any individual to register as a user in order to order a certified copy of the file wrapper." *Id.* at 2. The "certified file wrapper for the '440 Patent," DiversiTech

continues, "contains the specific images of the Hef-T-Pad that DiversiTech disclosed when it provided the E Lite Catalog to the PTO." *Id.* at 2–3. Thus, "[w]hile the '123 and '468 Patents' certified file wrappers were not, respectively, available at the time DuraPlas field its initial and supplemental complaints, the relevant file wrapper that contained the images of the Hef-T-Pad is *the certified file wrapper for the '440 Patent*." *Id.* at 4. DiversiTech goes on to argue that, "even if, for some unidentified reason, it was actually the case that the '440 Patent's file wrapper was not available to DuraPlas when it brought this action, that does not excuse DuraPlas's decision to delay amending its claims for months after it was clear that its "non- disclosure" allegations were unsupported." *Id.* at 4–5.

## II. Standard of Review

When a claimant fails to properly state a claim, district courts ordinarily grant leave to amend an inadequate complaint. Indeed, courts should freely give leave to amend when justice so requires. *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013) (citing Fed. R. Civ. P. 15(a)(2)). That said, that "generous standard is tempered by the necessary power of a district court to manage a case." *Id.* (quoting *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir. 2013), *abrogated in part on other grounds by Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542 (Tex. 2016)). Thus, in determining whether to grant leave to amend, "the court may consider factors such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party

by virtue of the allowance of the amendment, [and] futility of the amendment.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In short, "unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).

"A party who bears the burden on a particular matter will normally be permitted to open and close the briefing." *Buchanan-Rushing v. City of Royse City*, 794 F. Supp. 2d 687, 690 (N.D. Tex. 2011) (Boyle, J.) (quotation marks omitted) (quoting *Springs Indus., Inc. v. Am. Motorists Ins. Co., et al.,* 137 F.R.D. 238, 239 (N.D.Tex.1991) (Fitzwater, J.)). "The opposing party," however, "must be given a meaningful opportunity to file an additional response in those instances where additional arguments and supporting materials—in fairness—should be considered by the court despite being raised for the first time in a reply brief." *Id.* Thus, "when a movant raises new legal theories or evidence for the first time in its reply, the court may grant leave to file a surreply in order to afford the nonmovant an opportunity to respond." *Zurich Am. Ins. Co. v. Centex Corp.*, 373 F. Supp. 3d 692, 695 (N.D. Tex. 2016) (Godbey, J.).

## III. Analysis

### A. DiversiTech's Motion for Leave

DuraPlas's Reply raised an argument and made factual assertions not presented in its Motion. For example, DuraPlas asserted in its Reply that, "[w]hile there was a citation to an 'E-Lite catalog' in an Information Disclosure Statement ('IDS'), the catalog itself was not accessible through the PTO's public patent portal, nor was there any indication that the catalog even mentioned the Hef-T-Pad, much less its operative features." Reply at 2. DuraPlas also argued in its Reply that, "[b]ased on the information available at the time, DuraPlas reasonably understood the document to pertain only to the DiversiTech's E-Lite product line, not the Hef-T-Pad, and pled inequitable conduct accordingly." *Id.* As a result, DiversiTech must be given the opportunity to file its Sur-Reply in order to respond. *See Buchanan-Rushing*, 794 F. Supp. at 690; *Zurich Am. Ins. Co.*, 373 F. Supp. at 695.

**B. DuraPlas's Motion**

As discussed above, district courts ordinarily grant leave to amend an inadequate complaint. While the Court retains discretion to deny leave given considerations of undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice amendment would impose on the opposing party, and futility, for the reasons discussed below the Court sees no reason to depart from the ordinary approach here. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Leal*, 731 F.3d at 417 (recognizing these considerations as factors courts may consider in determining whether to grant leave to

amend); *Dussouy*, 660 F.2d at 598 (requiring a "substantial reason to deny leave to amend").

**1. Undue delay, bad faith, or dilatory motive**

There is no undue delay, bad faith, or dilatory motive sufficient to deny the Motion.

As for potential bad faith, DiversiTech argues permission to file the First Amended Complaint should not be given because "DuraPlas file[d] unsubstantiated claims that were directly contradicted by the documents it cited as the bases for the same," and "it then chose not to withdraw, or seek to amend, these allegations when faced with direct notice of their falsity via DiversiTech's motion to dismiss." Opposition at 10. In response, DuraPlas explains that it "reasonably understood" the relevant document, the "E-Lite catalog," "to pertain only to the DiversiTech's E-Lite product line, not the Hef-T-Pad, and pled inequitable conduct accordingly." Reply at 2. DuraPlas also argues "DiversiTech cannot credibly accuse DuraPlas of gamesmanship for failing to plead a theory based on a document it did not possess." *Id.* Furthermore, DuraPlas argues, it "believed its original inequitable conduct theory encompassed partial disclosure." Reply at 3.

Based on the Sur-Reply, the Court better understands the relevant circumstances. The evidence presented to the Court suggests DuraPlas and its lawyers failed to obtain the E-Lite catalog and appreciate its content because (1) it was a non-patent literature prior art document (2) with a name that may have obscured the nature

of its contents (3) that was not immediately available on the PTO's website and (4) the certified file wrappers for the '123 Patent and the '468 Patent were not available at the time the Original Complaint and the Supplemental Complaint were filed because those complaints were filed, respectively, on the day the '123 Patent and the '468 Patent issued. While the evidence also suggests the E-Lite catalog was available to DuraPlas and its lawyers given that they could have obtained the certified file wrapper of the '440 Patent, a parent of both the '123 Patent and the '468 Patent, taken as a whole these circumstances do not indicate bad faith.

Nor is there sufficient evidence DuraPlas engaged in undue delay. DiversiTech contends "the simple fact that DuraPlas waited nearly a year before seeking to plead its 'partial disclosure' theory . . . favors denying DuraPlas leave to add these allegations." Opposition at 13. As mentioned, DuraPlas argues in response that it "believed its original inequitable conduct theory encompassed partial disclosure." Reply at 3. While the Court rejected that position in the Dismissal, if the Court agreed then amendment would not be necessary. DuraPlas also filed the Motion two weeks after the Dismissal, which the Court expressly issued without prejudice, and more than four months before the Court's deadline of July 24, 2026 to amend pleadings. *See* Doc. No. 39.

Finally, DiversiTech has not identified any dilatory motive. While DiversiTech argues undue delay is sufficient evidence of dilatory motive, Opposition at 15, as discussed, the Court finds no undue delay.

**2. Repeated failure to cure deficiencies by previous amendments**

There have been no repeated failure to cure deficiencies by previous amendments. While DuraPlas filed a Supplemental Complaint, a supplemental complaint is not an amended complaint. DuraPlas has not previously filed an amended complaint.

**3. Undue prejudice amendment would impose**

The Court finds no undue prejudice would result were the Court to grant the Motion. While DiversiTech argues undue delay is sufficient evidence of prejudice, Opposition at 15, as discussed, the Court finds no undue delay. Furthermore, as argued by DuraPlas, the First Amended Complaint asserts largely "the same causes of action" and "similar factual allegations" as the Supplemental Complaint and, moreover, "does not fundamentally alter the nature of the case." Reply at 5. The Court also agrees with DuraPlas that, "[g]iven the overlap with the original claims, amendment will not impose significant additional discovery burdens." *Id.*

**4. Futility**

"It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000). In this regard, futility refers to the circumstance where the amended complaint "would fail to state a claim upon which relief could be granted." *Id.* at 873. Generally speaking, a pleading that properly states a claim for relief contains a short and plain statement of

the claim showing the complainant is entitled to relief. Fed. R. Civ. P. 8(a). To properly state a claim of fraud, however, the complainant must state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). To properly state a claim, a complaint must assert facts that, taken as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Though the court "must accept as true all of the allegations contained in a complaint," the court need not accept as true the complaint's "legal conclusions," "[t]hreadbare recitals of the elements of a cause of action," or "mere conclusory statements." *Id.* Furthermore, "[w]here there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940). And "[i]t is clearly proper in deciding a 12(b)(6) motion," and presumably the same in the context of deciding a motion to amend a complaint and resolving a related argument related to futility, "to take judicial notice of matters of public record." *Jenkins v. Tahmahkera*, 151 F.4th 739, 747 (5th Cir. 2025) (quoting *United States ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 274 n.8 (5th Cir. 2015) (cleaned up)). Applying these standards, here the Court finds the Motion is not futile. In other words, for the reasons discussed below, the Court concludes DiversiTech

has not shown that the First Amended Complaint would fail to state a claim upon which relief could be granted.

**a. Antitrust Allegations**

The Court agrees with DuraPlas that DiversiTech has not opposed the Motion with respect to DuraPlas's new antitrust allegations unrelated to the allegations of inequitable conduct. As a result, the Court finds DiversiTech has waived any opposition to the Motion with respect to those allegations.

**b. Inequitable Conduct Allegations**

Inequitable conduct must be pled with particularly under Rule 9(b). *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326–27 (Fed. Cir. 2009). That is, "in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the [Patent and Trademark Office]." *Id.* at 1327. As a result, the Court must consider the underlying details and standard necessary to prove inequitable conduct. "To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc). When inequitable conduct is based upon nondisclosure of prior art, the accused infringer must prove by clear and convincing evidence that the patent applicant knew of the prior art, knew that it was material to patentability, and nevertheless made a deliberate decision to withhold it. *Id.* The "materiality required to establish

inequitable conduct is but-for materiality." *Id.* at 1291. When inequitable conduct is based upon nondisclosure of prior art, the prior art is material "if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* This analysis requires determining "whether the PTO would have allowed the claim if it had been aware of the undisclosed reference" giving the patent claims their broadest reasonable construction and using the preponderance of the evidence standard. *Id.* at 1291–92.

**i. Materiality**

According to DiversiTech, DuraPlas "cannot plead but-for materiality" because "the Hef-T-Pad was disclosed." Opposition at 17. DiversiTech argues courts "consistently reject incomplete-description theories where the prior art was disclosed and accessible." *Id.* at 18. For support, DiversiTech quotes a district court opinion stating that "[c]ourts generally do not find incomplete description of a disclosed prior art reference a basis for claiming inequitable conduct." *Wright Asphalt Prods. Co., LLC v. Pelican Ref. Co., LLC*, No. CIV.A. H-09-1145, 2011 WL 2037631, at *6 (S.D. Tex. May 20, 2011).

The same opinion, however, explains that "cases finding inequitable conduct based on attorney arguments about disclosed prior art references involve more than incomplete descriptions of the prior art." *Id.* at *7. And the example it describes is when "the Federal Circuit held that submitting a Japanese-language prior art reference with a partial English translation amounted to a failure to disclose material information in the untranslated portion." *Id.* (citing *Semiconductor Energy Lab'y Co. v. Samsung Elecs. Co.*,

204 F.3d 1368, 1378 (Fed. Cir. 2000) (discerning no clear error in a district court's findings of materiality and intent and holding it did not abuse its discretion in finding a patent unenforceable based on inequitable conduct "in providing a misleadingly incomplete, partial translation" of a prior art reference and "a narrow and incomplete concise statement" about the reference)). That is analogous to what DuraPlas seeks to allege here. *See, e.g.*, First Amended Complaint at ¶ 100 ("Although the IDS listed a 28-page document described as 'E Lite Plastic Equipment Pads Literature, date appears to be 26 January 2011 . . .' (Ex. L) that incidentally references the Hef-T-Pad product, the document obscures several material elements of the Hef-T-Pad Prior Art that were ultimately claimed in the '123 Patent, including features of the Hef-T-Pad Prior Art's hubs, which are never disclosed in words and are fully obscured by a cap in the pictures presented, and the basic fact that the Hef-T-Pad Prior Art discloses multiple hubs."); *see also id.* at ¶ 110 (similar allegation related to the '468 Patent).

Indeed, the Federal Circuit has subsequently held that "[p]artial disclosure of material information about the prior art to the PTO cannot absolve a patentee of intent if the disclosure is intentionally selective." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 768 F.3d 1185, 1190 (Fed. Cir. 2014). Likewise, it has held that "purposeful omission or misrepresentation of key teachings of prior art references may . . . be indicative of a specific intent to deceive the PTO." *Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1099 (Fed. Cir. 2024). Notably, in one of these subsequent cases the court specifically found materiality with respect to the undisclosed information. *See Am. Calcar, Inc.*, 768 F.3d

at 1190 ("Because the district court did not commit clear error in its finding of materiality, we affirm the district court's determination that the undisclosed operational details of the 96RL navigation system are material to the patentability of the '465 and '795 patents."). Thus, it is quite clear that an incomplete description may be material. And, as discussed above, that is what DuraPlas seeks to allege here. *See, e.g.*, First Amended Complaint at ¶¶ 100, 110.

DiversiTech also argues DuraPlas cannot plead inequitable conduct because the "Hef-T-Pad was readily accessible online." Opposition at 18. But it is possible that a selective disclosure "focusing on less material portions" coupled with a "statement directed to these less material portions" may leave "the examiner with the impression that the examiner did not need to conduct any further . . . investigation." *See Semiconductor Energy Lab'y Co.*, 204 F.3d at 1377 ("By submitting the entire untranslated Canon reference to the PTO along with a one-page, partial translation focusing on less material portions and a concise statement directed to these less material portions, SEL left the examiner with the impression that the examiner did not need to conduct any further translation or investigation."). And that is, again, what DuraPlas seeks to allege here. *See, e.g.*, First Amended Complaint at ¶¶ 100, 110.

Next, DiversiTech argues "prior art that is merely cumulative of references already before the examiner cannot establish but-for materiality." Opposition at 19. For support, it cites a magistrate judge's opinion describing how, *in Exergen*, 575 F.3d at 1329–30, "the Federal Circuit struck inequitable conduct allegations that stated

generally that the references were 'material' and 'not cumulative' of the information already of record but did not identify the particular claim limitations, or combination of claim limitations, that were supposedly absent from the information of record." *SynQor v. Artesyn Techs., Inc.*, No. 2:07-CV-497-TJW-CE, 2010 WL 3860131, at *8 (E.D. Tex. Sept. 10, 2010), *report and recommendation adopted*, 2010 WL 3860154 (E.D. Tex. Sept. 28, 2010). Here, however, DurPlas has identified numerous specific "elements claimed in Claims 1 and 2 of the '123 Patent, which were omitted from the partial disclosure incidentally included in the 'E Lite Plastic Equipment Pads Literature' document," Doc. No. 123-1 at ¶ 103, as well as numerous specific "elements claimed in Claims 1 and 2 of the '468 Patent, which were omitted from the partial disclosure incidentally included in the 'E Lite Plastic Equipment Pads Literature' document," *id.* at ¶ 113. Moreover, DuraPlas seeks to allege "inequitable conduct by failing to disclose *noncumulative*, material information regarding the full scope of the known Hef-T-Pad Prior Art to the USPTO and by further misrepresenting the teachings of those references during prosecution of the '037 Application." *Id.* at ¶ 200 (emphasis added); *see also id.* at ¶ 247 (alleging "inequitable conduct by failing to disclose *noncumulative*, material information regarding the full scope of the known Hef-T-Pad Prior Art to the USPTO and by further misrepresenting the teachings of those references during prosecution of the '933 Application") (emphasis added). The allegations of noncumulativeness clearly relate to the allegedly omitted elements of the Hef-T-Pad claimed in the '123 and '468 Patent.

Continuing this line of argument, DiversiTech cites the examiner's consideration of U.S. Pat. Pub. No. 2005/0040308 ("Sweeney") as evidence of noncumulativeness. Opposition at 20. But DiversiTech merely argues a "review of Sweeney reveals that it discloses *both* of the very features DuraPlas contends were material and improperly withheld." *Id.* (emphasis added). DuraPlas includes allegations that omitted portions of the Hef-T-Pad disclose *eleven* limitations of two '123 Patent claims and *six* limitations of two '468 Patent claims. *See* Doc. No. 123-1 at ¶ 103 ('123 Patent), ¶ 113 ('468 Patent). And to the extent DiversiTech seeks to support its argument with evidence in the form of an expert declaration submitted as part of briefing related to injunctive relief, Opposition at 20 (citing Doc. No. 100-4), the court notes the declaration was not attached to any complaint and is not a public record. The Court therefore does not consider it in deciding futility and failure to state a claim. *See Ogbogu v. Navin*, No. 3:18-CV-1912-K-BH, 2019 WL 4307011, at *7 (N.D. Tex. Aug. 16, 2019), *report and recommendation adopted*, 2019 WL 4303102 (N.D. Tex. Sept. 11, 2019) (Kinkeade, J.) (explaining that a declaration attached to a motion to dismiss but not referenced in the relevant complaint and not a matter of public record "is not part of the pleadings for purposes of" a 12(b)(6) motion and "is not being considered").

DiversiTech next argues its disclosure of "the very Hef-T-Pad images DuraPlas now contends were material to the '123 and '468 Patents" during prosecution of a later patent eliminates but-for materiality. Opposition at 20–21. But DiversiTech itself

admits the later patent "claims . . features distinct from those claimed in the '468 and '123 Patents." *Id.* at 21.

In short, the First Amended Complaint includes sufficient allegations of materiality.

**ii. Intent**

According to DiversiTech, DuraPlas "does not" and "cannot" plead specific intent to deceive. Opposition at 21. More specifically, it argues "DuraPlas's proposed amendment pleads no facts that remotely support the inference that DiversiTech intended to deceive the patent examiner and there are no facts that exist that would support any such claim." *Id.* at 22.

DuraPlas, however, includes specific allegations of intent to deceive. For example, it says the "failure . . . to disclose to the USPTO noncumulative information regarding prior art references of which one or more of were aware and knew were material, coupled with their mischaracterizations of the very same features of the Hef-T-Pad Prior Art that they hid from the USPTO as 'new' features of the alleged invention and failure to correct such mischaracterizations, was intended to deceive the USPTO." Doc. No. 123-1 at ¶¶ 108, 118; *see also id.* at ¶¶ 199, 246 ("By failing to disclose to the USPTO material features of references of which one or more of DiversiTech, Ms. Kroner, Mr. Sada, and DiversiTech's patent prosecution counsel, including Attorney RT, were aware and knew were material and by further misrepresenting the teachings of those references during prosecution, DiversiTech, by

or through Ms. Kroner, Mr. Sada, and/or its counsel Attorney RT, intended to deceive the USPTO.").

DiversiTech goes so far as to contend "[t]he proposition that an applicant who voluntarily places prior art before the examiner harbored a simultaneous intent to conceal that art defies logic." Opposition at 23. But the Federal Circuit has repeatedly recognized the possibility of specific intent to deceive with respect to misleading partial disclosure. *See Semiconductor Energy Lab'y Co.*, 204 F.3d at 1378 ("[W]e discern no clear error in the district court's findings with respect to materiality and intent, and hold that the district court did not abuse its discretion in finding the '636 patent to be unenforceable for SEL's inequitable conduct in providing a misleadingly incomplete, partial translation of the Canon reference and a narrow and incomplete concise statement."); *Am. Calcar, Inc.*, 768 F.3d at 1190 ("Partial disclosure of material information about the prior art to the PTO cannot absolve a patentee of intent if the disclosure is intentionally selective."); *Luv n' Care, Ltd.*, 98 F.4th at 1099 (recognizing that "purposeful omission or misrepresentation of key teachings of prior art references may . . . be indicative of a specific intent to deceive the PTO").

Finally, DiversiTech maintains "legal arguments made in the course of advocating for the patents' issuance" do not support specific intent to deceive. Opposition at 23. For support, DiversiTech cites *Innogenetics, N.V. v. Abbott Lab'ys*, 512 F.3d 1363, 1379 (Fed. Cir. 2008). In that case, DiversiTech points out, the Federal Circuit held that a prosecuting attorney's statement to the PTO that certain prior art

"references do not relate to the [claimed] invention" did not constitute a material omission or misrepresentation even where the attorney "admitted that he did not actually examine the prior art identified." *Id.* at 1379. The Federal Circuit indeed held that the attorney's representation "amounted to mere attorney argument" and the court's "precedent has made clear that an applicant is free to advocate its interpretation of its claims and the teachings of prior art." *Id.* The problem for DiversiTech, however, is that the Federal Circuit qualified its holding: "Given that the [relevant prior art] had been submitted for the patent examiner to examine herself, she was free to accept or reject the patentee's arguments distinguishing its invention from the prior art." *Id.* Here, by contrast, DuraPlas alleges that the relevant prior art—at least relevant parts of it—had not been submitted for the patent examiner to examine, and therefore the examiner allegedly did not have the proper information to accept or reject the patentee's arguments distinguishing its invention from the prior art.

As DuraPlas argued in its Reply, it need only plausibly allege facts supporting a reasonable inference of deceptive intent. *See Exergen*, 575 F.3d at 1329 n.5 (noting "an inference of deceptive intent must be reasonable and drawn from a pleading's allegations of underlying fact to satisfy Rule 9(b)"). It has done so here. The Court agrees with DuraPlas, moreover, that, "[w]hile *Therasense* heightened the substantive inequitable conduct standard, it did not eliminate partial-disclosure theories or convert Rule 15 futility into a full merits inquiry." Reply at 10.

In short, the First Amended Complaint includes sufficient allegations of intent to deceive.

* * *

The Court concludes that DuraPlas has identified the specific who, what, when, where, and how of an alleged material misrepresentation or omission committed before the PTO. In particular, the Court finds DuraPlas has alleged but-for materiality, and the Court finds DuraPlas has alleged specific intent to deceive.

**c. Invalidity Allegations**

With respect to DuraPlas's invalidity allegations, DiversiTech contends "DuraPlas utterly fails to assert any basis that would allow the Court to find that the examiner failed to properly consider the matters before him" and that "DuraPlas's new . . . invalidity allegations rest on prior art on the face of the patent that the examiner expressly considered." Opposition at 25. But the First Amended Complaint complies with Rule 8 and with *Twombley* and *Iqbal* by identifying specific prior art, explaining how that art relates to the relevant claims of relevant patents, and alleging anticipation and/or obviousness. *See* Doc. No. 123-1 at ¶¶ 186–87, 233–34, 251–52.

DiversiTech appears to suggest that prior art considered by the PTO cannot support invalidity. The Federal Circuit and the Supreme Court, however, have implicitly indicated the opposite is true. "While prior consideration of a reference during prosecution may carry some weight, the burden to prove invalidity does not change; at all times, it remains a showing 'by clear and convincing evidence.'" *OSRAM*

*Sylvania, Inc. v. Am. Induction Techs., Inc.*, 701 F.3d 698, 705 (Fed. Cir. 2012) (quoting *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 111 (2011)). Even if DuraPlas relies upon prior art already considered by the PTO, that reliance does not make the First Amended Complaint futile; the First Amended Complaint still states a claim upon which relief could be granted—if DuraPlas can meet the clear and convincing standard of proof. *See id.*

### 5. Motion to Seal

As a final matter, the Court must determine whether to seal portions of the First Amended Complaint pursuant to the Motion to Seal (Doc. Nos. 144, 146). When DuraPlas filed the Motion, it also filed a required "Certification," *see generally* Doc. No. 122, which notified the Court that DiversiTech would be filling a brief in support of sealing portions of the First Amended Complaint. Later, DiversiTech filed its brief under seal in support of redacting select portions of the First Amended Complaint. *See generally* Doc. No. 146 (the "Motion to Seal"). In the Motion to Seal, DiversiTech urges the Court to redact eight different portions of the First Amended Complaint where DuraPlas supposedly "identifie[s] confidential information." Doc. No. 146 at 3–4.

There is a "working presumption that judicial records should not be sealed. The same principle applies to redacting judicial records." *Frank Serveying Co., Inc. v. Manhard Consulting, Ltd.*, No. 3:22-CV-2837, 2024 WL 3015535, at *1 (Boyle, J.) (citation modified). In particular, "sealing a *complaint* is extraordinary relief. A complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of

the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." *Bakios v. Michaels Stores, Inc.*, No. 3:23-CV-1274-K, 2024 WL 812020, at *7 (N.D. Tex. Feb. 27, 2024) (citation modified) (quoting *FTC v. AbbVie Prod., LLC*, 713 F.3d 54, 62 (11th Cir. 2013)). Accordingly, the Fifth Circuit has made clear that—

> [w]hen a party seeks to file material under seal, the judge must "undertake a case-by-case, 'document-by-document,' 'line-by-line' balancing of 'the public's common law right of access against the interests favoring nondisclosure'" and explain its sealing decision "at 'a level of detail that will allow for [Fifth Circuit] review.'" A court errs "if it 'ma[kes] no mention of the presumption in favor of the public's access to judicial records' and fails to 'articulate any reasons that would support sealing.'"

*I F G Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402, 410 (5th Cir. 2023) (citation modified).

DiversiTech does not move to seal the First Amended Complaint in its entirety; instead, it asks for redactions. Doc. No. 146 at 2. "Redacting can be preferable to sealing when the redactions are less restrictive on the public's right of access." *Frank Surveying Co.*, 2024 WL 3015535, at *2. Courts apply the same analysis to a redaction request as a request to seal a judicial record in its entirety; "the court must undertake a document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure. Ultimately, courts should be ungenerous with their discretion, and any necessary redaction must be congruent to the need." *Id.* (citation modified). The mere fact that redactions are unopposed does not satisfy a party's obligation to adequately justify how its disclosure interests

overcome the public's interest in assessing information in the judicial record. *Id.* (citation omitted). And the mere fact that the parties have designated certain information as "confidential" or "attorney's eyes only" is insufficient to justify a decision to seal. *See, e.g.*, *Providence Title Co. v. Truly Title, Inc.*, 732 F. Supp. 3d 656, 672 (E.D. Tex. 2024) (denying motion to seal because parties merely stated information was "Confidential" and/or "Attorneys Eyes Only").

Before addressing the proposed redactions, the Court first takes issue with the Motion to Seal as a whole. Although the Fifth Circuit calls for "line-by-line balancing" to a level that will allow for appellate review, *see I F G Port Holdings, L.L.C.*, 82 F.4th at 410, the Motion to Seal makes a broad, blanket argument urging the Court to implement all of its proposed redactions. *See generally* Doc. No. 144 at 6; Doc. No. 146 at 5–6. DiversiTech broadly argues, *inter alia*, that it "would face competitive commercial harm" if the redactions are not accepted, that "Courts have found information that discloses potential strategy as a reason for keeping that information under seal," and that disclosure would allow competitors "to utilize its proprietary information in an effort to undercut DiversiTech's market position." *See generally id.* DiversiTech's arguments are not conducive to the line-by-line weighing required by the Fifth Circuit. *See EDN Global Inc. v. AT&T Mobility Servs. LLC*, 3::23-CV-0355-X, 2026 WL 1865707, at *2 (N.D. Tex. June 26, 2026) (Starr, J.) ("A moving party must (1) identify precisely what information (pages, lines, etc.) the party wants sealed; (2) conduct a line-by-line, page-by-page analysis explaining and briefing why the risks of

disclosure outweigh the public's right of access; and (3) explain why no other viable alternative to sealing exists."); *AFS Logistics, LLC v. Tetria Glob. Logistics, LLC*, No. 4:21-CV-1086-O, 2022 WL 11902222, at *1 (N.D. Tex. Oct. 20, 2022) (O'Connor, J.) ("A court thus has discretion to summarily deny a request to seal when it is apparent that the submitter has not conducted its own document-by-document, line-by-line review.").

Nonetheless, the Court turns to the proposed redactions. DiversiTech proposes redactions to the following portions of the First Amended Complaint: (1) Para. 45 and FN 1; (2) Para. 57; (3) Para. 128 and FN 8; (4) Para. 135 and FN 9; (5) Para. 136 and FN 10: (6) Para. 136 and FN 11; (7) Para. 138 and FN 12; (8) and Para. 140 and FN 14. Doc. No. 144-1 (Exhibit A). The Court balances the competing interests with respect to each portion below. *See Frank Surveying Co.*, 2024 WL 3015535, at *2. For the following reasons, all of DiversiTech's requests to redact the First Amended Complaint are **denied without prejudice** to filing a renewed motion to seal. Should DiversiTech file a renewed motion, it must do so **no later than seven (7) days after the entry of this Order**.

**a. Para. 45 and FN 1**

Para. 45 and FN 1 concern "DiversiTech's market estimates for its plastic pads, including prospective estimates going forward" found from evidence designated as

attorneys' eyes only ("AEO"). Doc. No. 144-1 at 2. DiversiTech broadly argues that these sections must be redacted because, if left unredacted, DiversiTech "would face competitive and commercial harm if a competitor learned of DiversiTech's business strategies, including its market share." Doc. No. 146 at 5.

DiversiTech's proffered reason does not outweigh the public's interest in nondisclosure. Given that DuraPlas alleges DiversiTech violated the Sherman Act, the public has a deep interest in DuraPlas's allegations concerning DiversiTech's market share. As a court in this District recently explained in a similar context, "market share is directly relevant to this case. This is an antitrust lawsuit, after all. Information does not warrant sealing merely because it casts Defendant[] in a potentially unfavorable light." *Open Cheer & Dance Championship Series LLC, et al. v. Varsity Spirit, LLC, et al.*, 2:23-CV-155-Z, 2026 WL 1270053, at *6 (N.D. Tex. 2026) (Kacsmaryk, J.). Furthermore, the mere fact that this portion of the First Amended Complaint comes from estimates designated as "attorney eyes only" is insufficient to justify redaction. *See Frank Surveying Co.*, 2024 WL 3015535, at *2. Accordingly, DiversiTech's request to redact Para. 45 and FN 1 is **denied**.

**b. Para. 57**

Para. 57 concerns "DiversiTech's prospective market estimates for its pads going forward." Doc. No. 144-1 at 2. For the same reasons as Para. 45 and FN 1, the request

is **denied**. The public's interest in DuraPlas's allegations concerning DiversiTech's market share in an anti-trust case outweighs the interests favoring non-disclosure. *See Open Cheer*, 2026 WL 1270053, at *6.

**c. Para. 128 and FN 8**

Para. 128 and FN 8 address "DiversiTech's customer specific business strategies" contained in evidence designated as AEO. Doc. No. 144-1 at 2. The Court is unable to identify any specific argument presented in the Motion to Seal as to why this portion of the First Amended Complaint would harm customer specific business strategies. The undersigned therefore concludes that the public's interest in DuraPlas's allegations concerning DiversiTech's remarks to Affiliated Distributors outweighs the interest favoring non-disclosure. *AFS Logistics, LLC*, 2022 WL 11902222, at *1 ("A court thus has discretion to summarily deny a request to seal when it is apparent that the submitter has not conducted its own document-by-document, line-by-line review."); *see also EDN Global Inc.*, 2026 WL 1865707, at *2 ("A moving party must . . . conduct a line-by-line, page-by-page analysis explaining and briefing why the risks of disclosure outweigh the public's right of access."); *Ogbebor v. Hardy*, No. 6:24-CV-00313 SEC P, 2026 WL 1365844, at *2 (W.D. La. April 23, 2026) ("This Court . . . generally allows litigants to seal documents only if they supplied the Court with sufficient reasons for sealing said documents."). The request to redact Para. 128 and FN 8 is **denied**.

**d. Para. 135 and FN 9**

Para. 135 and FN 9 discuss what DiversiTech claims are "confidential communications detailing specific competitive business strategies" contained in evidence designated as AEO. Doc. No. 144-1 at 2. The Fifth Circuit has previously rejected district court orders sealing information when the district court "relied on conclusory assertions that the information was 'competitively sensitive' and implicated nonspecific, undefined privacy interest." *Carr v. IF&P Holding Co., LLC*, No. 22-480, 2024 WL 6081284, at *1 (E.D. La. May 1, 2024) (citing *IFG Port Holdings*, 82 F.4th at 410–11). Similarly, here, DiversiTech's broad assertions—as already discussed above—do not allow for the Court to precisely identify why the information contained in Para. 135 and FN 9 is confidential. *See id.* The request to redact Para. 135 and FN 9 is therefore **denied**.

**e. Para. 136 and FN 10**

Para. 136 and FN 10 discuss what DiversiTech claims—in a manner identical to Para. 135 and FN 9—are "confidential communications detailing specific competitive business strategies" contained in evidence designated as AEO. Doc. No. 144-1 at 2. For the same reasons as Para. 135 and FN 9, the request to redact Para. 136 and FN 10 is **denied**. *See Carr*, 2024 WL 6081284, at *1 (citing *IFG Port Holdings*, 82 F.4th at 410–11).

**f. Para .136 and FN 11**

The Court has already denied DiversiTech's request to redact Para. 136. As to FN 11, the request is **denied** on the same grounds as stated above. *See id.* (citing *IFG Port Holdings*, 82 F.4th at 410–11).

**g. Para. 138 and FN 12**

Para. 138 and FN 12 discuss what DiversiTech urges are "customer specific business strategies" contained in evidence designated as AEO. Doc. No. 146 at 4. One of the sentences in Para. 138 that DiversiTech seeks to redact includes the names of two customers, both of which are companies. First, to the extent Para. 138 and FN 12 reference information other than the names of the two customers, that information is properly left unredacted for the same reasons stated above. *See Carr*, 2024 WL 6081284, at *1 (citing *IFG Port Holdings*, 82 F.4th at 410–11). As to the names DiversiTech seeks to redact, these are also properly left unredacted at this time. Courts have previously allowed for redaction when, *inter alia*, exposing an individual's name would implicate his or her privacy rights. *See, e.g.*, *Open Cheer*, 2026 WL 1270053, at *5. However, DiversiTech does not provide the Court with any specific reason for redaction here. Accordingly, the request to redact Para. 138 and FN 12 is **denied**. *See AFS Logistics, LLC*, 2022 WL 11902222, at *1 ("A court thus has discretion to summarily deny a request to seal when it is apparent that the submitter has not conducted its own document-by-document, line-by-line review.").

**h. Para. 140 and FN 14**

Para. 140 and FN 14 discuss what DiversiTech claims are "confidential communications detailing specific competitive business strategies" contained in evidence designated as AEO. Doc. No. 144-1. The Court sees no reason to redact this portion of the First Amended Complaint. DiversiTech also does not offer a specific reason justifying redaction. The request to redact Para. 140 and FN 14 is **denied**. *See AFS Logistics, LLC*, 2022 WL 11902222, at *1 ("A court thus has discretion to summarily deny a request to seal when it is apparent that the submitter has not conducted its own document-by-document, line-by-line review.")

**i. Denial Without Prejudice**

The Court **denies** all of DiversiTech's requests to redact the First Amended Complaint **without prejudice**. Should DiversiTech wish to file a renewed motion to seal, it may do so **no later than seven (7) days after the entry of this Order**. The Court has clearly set forth the standards governing sealing in ruling on the Motion to Seal. *See also Blue Yonder Grp., Inc. v. Kinaxis Inc.*, No. 3:20-CV-03636-K, 2023 WL 11979505, at *2 (N.D. Tex. Nov. 2, 2023). To be clear, should DiversiTech choose to file a renewed motion to seal, it must (1) identify precisely what information (pages, lines, etc.) it wants redacted; and (2) conduct a line-by-line, page-by-page analysis as to the specific proposed redactions explaining and briefing why the risks of disclosure outweigh the public's right of access. If DiversiTech's renewed motion does not conduct such a line-by-line, page-by-page analysis, the Court will summarily deny the renewed motion. *See AFS Logistics, LLC*, 2022 WL 11902222, at *1. Furthermore, if DiversiTech

fails to file a timely renewed motion or files a renewed motion that fails to show that sealing/redaction is warranted, the Court **WILL UNSEAL** the First Amended Complaint (Doc. No. 123) without further notice. At this time, the First Amended Complaint **REMAINS UNDER SEAL** pending a further order of the Court.

## IV. Conclusion

For the reasons stated above, the Court **GRANTS** both the Motion for Leave to file Sur-Reply and the Motion. However, the Court **DENIES WITHOUT PREJUDICE** the Motion to Seal. The Court **ORDERS** the following:

- The Sur-Reply is deemed filed as of the date of DiversiTech's Motion for Leave.
- The First Amended Complaint along with its exhibits are deemed filed as of the date of DuraPlas's Motion. The deadline for responding to the First Amended Complaint, however, shall be determined by using the date of this Order as the filing date of the First Amended Complaint.
- **No later than seven (7) days after the entry of this Order**, DiversiTech **MAY FILE** a renewed motion to seal consistent with the Order.

**SO ORDERED.**

Signed September 28th, 2026.

Ed Kinkeade

ED KINKEADE
UNITED STATES DISTRICT JUDGE